IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-82

No. 341A21

Filed 15 July 2022

IN THE MATTER OF: A.M.C. and N.A.G.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 27 May 2021 by Judge Kimberly Gasperson-Justice in District Court, Henderson County. This matter was calendared in the Supreme Court on 1 July 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Susan F. Davis, Assistant County Attorney, for petitioner-appellee Henderson County Department of Social Services.*
>
> *Alston & Byrd LLP, by Kelsey L. Kingsbery, for appellee Guardian ad Litem.*
>
> *Freedman Thompson Witt Ceberio & Byrd PLLC, by Christopher M. Watford, for respondent-appellant mother.*

EARLS, Justice.

Respondent-mother appeals from the trial court's order terminating her parental rights in her minor children "Ava" and "Noah."[1] The sole basis for the appeal is the trial court's denial of her counsel's motion for a continuance of the termination hearing. The record demonstrates that this motion was not based on the potential

---

[1] Pseudonyms are used to protect the identity of the minor children and for ease of reading.

denial of a constitutional right; therefore, an abuse of discretion standard applies. We conclude that the trial court did not abuse its discretion in denying the motion to continue, and we affirm the trial court's order terminating respondent's parental rights in Ava and Noah.

## I.    Background

On 21 June 2019, the Henderson County Department of Social Services (DSS) filed a juvenile petition alleging that Ava and Noah were neglected and dependent juveniles. The petition stated that law enforcement had executed a search warrant that morning at respondent's home, where they discovered intravenous needles, some filled with a "brownish clear liquid," and a pipe, all within easy reach of the children. Law enforcement contacted DSS after discovering Ava and Noah in the home and arrested respondent and her boyfriend on charges related to methamphetamines. Respondent told a social worker she was using methamphetamines and had been doing so for at least a year, but she refused to sign a safety plan or participate in services with DSS and was unable to identify a potential placement for the children. Based on the allegations in the petition and lack of an appropriate caretaker, DSS sought and obtained nonsecure custody of the children the same day.

After a hearing on 10 October 2019, the trial court entered an order adjudicating Ava and Noah to be neglected and dependent juveniles. The adjudication was based on the allegations in the juvenile petition as well as the children's

subsequent forensic medical examinations, which revealed further evidence regarding how respondent's drug use was affecting the children and evidence of the children's exposure to domestic violence. Noah's hair follicle test returned positive for methamphetamine, amphetamine, and cocaine. In the contemporaneous disposition order, the court ordered respondent to satisfy several requirements to achieve reunification with the children, including completing assessments related to substance abuse and domestic violence and following the resulting recommendations, submitting to random drug screens, obtaining a stable income and maintaining appropriate housing, visiting with the children, and keeping in contact with DSS. The children were placed in their aunt's care.

¶ 4        In the order entered following the first review and permanency-planning hearing held on 13 February 2020, the trial court found respondent had made some progress towards completing the requirements for reunification. Respondent had obtained a substance abuse assessment, which recommended individual and family therapy and ninety hours in a substance abuse intensive outpatient treatment program (SAIOP), and had begun individual therapy. The court had established a child support requirement of $50.00 a month. Moreover, the court found that respondent had visited with the children, maintained contact with DSS, and obtained appropriate housing. Nonetheless, the court found respondent's progress to be inadequate based upon her multiple positive drug screens, as well as her failures to

obtain a domestic violence assessment, complete a parenting class, obtain employment or a stable and sufficient income, or complete substance abuse treatment.[2] The court set a primary plan of reunification and a secondary plan of guardianship with an appropriate caretaker and allowed respondent a minimum of one hour of supervised visitation per week.

¶ 5      After several continuances, the matter came on for a review and permanency planning hearing on 10 December 2020. The court again found respondent's progress towards completing the requirements for reunification insufficient to remedy the conditions which led to the children's removal. Respondent had either failed to submit to requested drug screens or tested positive; failed to complete substance abuse treatment; failed to complete a domestic violence assessment, despite evidence of continued domestic violence between respondent and her boyfriend; failed to complete parenting classes; failed to pay child support, having accrued a $250.00 arrearage; and failed to obtain employment or a stable income. The court changed the primary plan to adoption and maintained a secondary plan of guardianship with an appropriate caretaker. The trial court found that the children were negatively affected by visitation with respondent, especially Noah, who "reacted very

---

[2] Respondent began SAIOP in August 2019, but due to "a decline in her participation and attendance and positive drug screens," her recommended treatment was changed to inpatient treatment. She arrived at the inpatient facility on 31 December 2019, but she was asked to leave less than two weeks later on 12 January 2020 and was unable to complete the program.

disrespectfully towards his aunt" afterward. The court thus suspended respondent's visitation.

¶ 6        On 25 January 2021, DSS filed a motion to terminate respondent's parental rights in Ava and Noah based on neglect and failure to make reasonable progress. N.C.G.S. § 7B-1111(a)(1)–(2) (2021). The termination hearing was first scheduled for 8 April 2021, but it was continued to 16 April 2021 "due to the number of cases scheduled for hearing and the lack of available court time." At the beginning of the hearing, respondent's counsel requested a continuance, but the trial court denied the motion. In the termination order entered on 27 May 2021, the court determined that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2) and concluded that termination of respondent's parental rights was in Ava's and Noah's best interests.[3]

## II.    Analysis

¶ 7        Respondent's sole argument on appeal is that the trial court violated her constitutional right to effective assistance of counsel when the court denied her counsel's motion for a continuance. Respondent argues that her counsel "was not provided with an opportunity to appropriately prepare" a defense for the termination hearing. She asserts this purported violation of her rights created a presumption of

---

[3] The order also terminated the rights of Ava and Noah's father, but he is not a party to this appeal.

prejudice because there is no evidence she was the cause of the delay in her counsel's preparation.

¶ 8        "Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.*, 374 N.C. 515, 516–17 (2020) (quoting *State v. Walls*, 342 N.C. 1, 24 (1995)). If the motion is based on a constitutional right, "the motion presents a question of law and the order of the court is reviewable." *Id.* at 517 (quoting *State v. Baldwin*, 276 N.C. 690, 698 (1970)). "However, when '[the respondent] did not assert in the trial court that a continuance was necessary to protect a constitutional right,' this Court does not review the trial court's denial of a motion to continue on constitutional grounds." *In re D.J.*, 378 N.C. 565, 2021-NCSC-105, ¶11 (alteration in original) (quoting *In re A.L.S.*, 374 N.C. at 517). A motion to continue based upon trial counsel's request for more time to prepare does not equate to such an assertion. *See In re A.J.P.*, 375 N.C. 516, 522–24 (2020) (reviewing a denial of a motion to continue for abuse of discretion where trial counsel asserted he needed "more time for preparation" after allegedly receiving an underlying order only days before the termination hearing); *In re S.M.*, 375 N.C. 673, 678–79 (2020) (reviewing a denial of a motion to continue for abuse of discretion when trial counsel asserted he needed more time to prepare a defense for, or subpoena witnesses related to, a psychosexual evaluation of his client that he received the day before the hearing).

¶ 9          Here, respondent's counsel did not assert in the trial court that a continuance was necessary to protect a constitutional right. Instead, he stated: "My reasoning behind the continuance. Last week was certainly [respondent's] more recent incarceration. And they did not provide me an opportunity to really prepare [respondent] for today's defense . . . ." Counsel also discussed the imminent possibility of respondent beginning a 120-day inpatient substance abuse treatment program. But these reasons do not amount to the assertion of a constitutional right. Thus, respondent has waived any argument that the denial of the motion to continue was based on a legal issue implicating her constitutional rights, and we review the court's ruling on the motion to continue for abuse of discretion. *In re A.J.P.*, 375 N.C. at 523.

¶ 10         "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (quoting *State v. Hennis*, 323 N.C. 279, 285 (1988)).

> In reviewing for an abuse of discretion, we are guided by the Juvenile Code, which provides that continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice. Furthermore, continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice.

*In re J.E.*, 377 N.C. 285, 2021-NCSC-47, ¶15 (cleaned up). In this case those factors show that the trial court's ruling was reasonable and not arbitrary.

The termination hearing was held on 16 April 2021, eighty-one days after DSS filed the motion to terminate respondent's parental rights. Based on counsel's request for more time to prepare, and his reference to respondent's intention to enter a 120-day treatment facility—the application for which was "still pending" at the time of the termination hearing—it appears a continuance would have pushed the hearing beyond the ninety-day period prescribed by N.C.G.S. § 7B-1109(d). Thus, respondent was required to show "extraordinary circumstances" to justify a continuance. *See* N.C.G.S. § 7B-1109(d) (2021). We conclude that she failed to make such a showing.

Respondent places great emphasis on a purported "third-party involvement or interference," which allegedly prevented her counsel from preparing for the hearing. At the termination hearing, a DSS social worker testified that law enforcement found drugs during a raid of respondent's home on 12 March 2021. As a result, respondent was arrested and jailed at the Henderson County Detention Center. In requesting a continuance, as noted above, counsel for respondent merely stated, "Last week was certainly [respondent's] more recent incarceration. And they did not provide me an opportunity to really prepare [respondent] for today's defense . . . ." While respondent concedes trial counsel "never identified the third party[,]" she suggests that "it seems likely that [counsel's] reference may indicate" it was the staff at the detention center who impeded her counsel's ability to prepare for the hearing.

We find such conjecture, without any concrete evidence of direct interference

from jail staff, insufficient to support a conclusion that extraordinary circumstances are present in this case. *Cf. In re J.E.*, ¶17 ("Respondent's attempt on appeal to explain his absence by asserting it was 'likely' he did not know the hearing date is not convincing. Respondent never affirmatively asserts he did not have notice of the hearing."). The motion to terminate respondent's parental rights was filed on 25 January 2021, respondent was incarcerated on 12 March 2021, and she remained incarcerated when the termination hearing was held on 16 April 2021. Without more, respondent's incarceration for thirty-five out of eighty-one days between the filing of the motion and the hearing does not create extraordinary circumstances mandating additional time. We conclude that the trial court did not abuse its discretion in denying her motion for a continuance. *See id.* ¶19.

¶ 14        Having concluded that the trial court did not abuse its discretion in denying the motion for a continuance, we do not need to address whether denial of the motion prejudiced respondent; however, respondent also argues that the denial of the continuance motion, whether or not the motion was explicitly premised on the denial of a constitutional right, did, in fact, deprive her of her right to effective assistance of counsel. Respondent also characterizes her attorney's performance as deficient because he failed to present "her side of things" to the trial court. While she concedes that her attorney "made a handful of objections," she asserts that he "offered very little defense" in that he did not present any evidence or witnesses or give a closing

argument. Respondent contends that because her attorney "knew that he was limited in his ability to represent" her, he was unable to present her testimony concerning "her ability to comply with classes and treatment programs, or her lack thereof," her motivations, and her intentions, as well as her "evidence to clarify the bare assertions of the social worker gleaned from hearsay sources."

We note that respondent's counsel was appointed to represent her on 11 July 2019, nearly two years before the termination hearing. He received a copy of the motion to terminate respondent's parental rights on 25 January 2021 and filed an answer to the motion on 24 February 2021. In addition to the "handful of objections" made by her counsel that respondent acknowledged, her counsel cross-examined a witness during adjudication, and it appears from the transcript that neither party was offered or made closing arguments. Respondent makes no effort to indicate what evidence could have been presented, or what facts might have been established, had a continuance been granted and her counsel been afforded more time to prepare for the hearing. Moreover, respondent does not challenge any evidence presented at the hearing or the trial court's findings or conclusions based on that evidence. Therefore, respondent has failed to demonstrate ineffective assistance of counsel and has failed to establish grounds to reverse the termination order or to receive a new termination hearing.

### III.    Conclusion

Accordingly, we conclude that the trial court did not abuse its discretion in denying respondent's motion for a continuance and that there is no factual basis for the assertion that counsel's performance at the termination hearing was constitutionally deficient. Because respondent in this appeal did not challenge either the grounds for termination or the determination that termination was in Ava's and Noah's best interests, we affirm the trial court's termination order.

AFFIRMED.